Okay, the next argued case is number 18-1253 and Ray Kollman, Mr. Allstadt. May it please the court, the case before us involves a machine that's used to cut down blinds that are of a standard size to a narrower width. You buy a blind that's 36 inches, you have a 34 inch wide window, you trim the edges an inch off of each side. Those claims for that blind cutting machine have been rejected based upon a citation to a published application, McGlinchey, which is titled Method and Apparatus for Processing Sealant in an Insulating Glass Unit. Basically an oven into which you put the window, heats it up, and then activates the sealant. The law says that the office in rejecting claims must rely on or cannot rely on patents that are unrelated to the technology before them, the non-analogous prior work. And for a reference to be an analogous reference, it has to be one of two standards, be in the same field, the office contends that, or agrees, this oven that's used to heat windows is not in the same field as a cutting machine. Or the second standard, the second test is be reasonably pertinent to the problem that the inventors are trying to solve. And the case law goes on to say, well, we look at the specifications of the references to identify the problems that the inventors were trying to solve. And if we do that, we see that the present invention is concerned with errors caused by the sales associate in the store in measuring and calculating the dimensions of the blind to be cut, and improving the timing of getting the job done. Whereas if we look at the problem that McGlinchey's trying to solve, what he's trying to solve is to automatically vary the energy that's applied to the glass window based upon the optical properties of the glass. But what the prior art was attempting to solve isn't really the question, it's the question is what is the current inventor trying to solve? And how would they look broadly at categories? They don't necessarily say, I'm only going to look at someone who is trying to solve my same problem, otherwise you would never find prior art to be relevant for purposes of an obviousness analysis where you've got to combine elements. There would always be something missing. Well that's true, you're looking at the problem that the inventor is trying to solve and the claims under consideration, but the question becomes, is this reference going to reasonably come to his attention or something he might look at based upon what that product is doing or trying to do? And here we say, that's an oven. What they're trying to do is determine whether to turn on more or less heat lamps depending on the properties of the glass that's in the oven. But couldn't it also be that it's looking to machinery to determine, and the question is how do you set parameters for this machine? If that were true, that it was to set parameters, then you've got every machine that ever existed. And I don't think that's the right question. The question is how do you set parameters in this type or similar machines? And it's just not related to the area. As someone determining how to build a saw machine, a cutting machine, is not going to look at a method and apparatus for processing a glass insulating unit. So would you limit the field of art to what? The field of art would be to machines involved in cutting work pieces. And those are all the other references that they've cited relate to cutting work pieces. Okay, so you wouldn't limit it to cutting blinds, window blinds? No. No, and in fact, I think the Dick reference is cutting a linear board into pieces of the same size. But there is... Before the examiner, was there ever any discussion of who one of skill in the art would be? Because it seems like the board addressed that for the first time. The examiner didn't make any finding, and I recall, on who one skill in the art would be. What the examiner did is he looked at, he found McGlinchey somehow and said, this is what it teaches. He didn't go through the process of qualifying it as appropriate art. And when we challenged him and said, why is this concerned with the same field? Why would someone in the art designing a cutting machine look at an oven? He says, well, the teaching about having a barcode, well, you don't look at the teaching to the reference until you qualify it as prior art, and he didn't do that, and the board did not do that. They've not offered any explanation as to why someone who is trying to build a machine for cutting blinds is going to look at a machine that's a method for... The problem your client was trying to solve was to avoid input errors, right? Errors in... To avoid inputting incorrect dimensions. That's right. That's right. And so, if other inventors have figured out a way to avoid input errors in non-related fields of art, wouldn't those other inventors' way of going about avoiding input errors be relevant? Well, I think it has to be a similar type of errors. If someone's involved in some totally... What about input error that affects the end product? Well, we're talking about the... Input type error that affects what you're trying to do, you're trying to manufacture something. Well, you're trying to... And you want to avoid input errors in the manufacturing process, dealing with dimensional, primarily dimensional features, length, width, size, ingredient. These are typical type of limited number of things that happen in the manufacturing world. And you're trying to avoid errors in the inputs. That seemed to me that was really what was going on here. Yeah. I agree with you, except we're not into the chemical reaction or that. No, I understand that. But, I mean, in terms of the windows, they're trying to, depending on what it is they're trying to create, they're putting in different dimensions, if you will, to get a result. Well, they're not dimensions... By dimensions, I mean parameters for the construction of the product. Yeah. They're concerned about heating the sealant so you get it soft enough or activate the catalyst enough so that it's going to react and harden. That's the instructions you're giving to the machine. Right. And that's based on... And you want to avoid the input errors. Well, you want to make sure that you have enough energy going in, that's... In other words... I mean, you have... You dial it at one for one, you dial it for the other, and their barcode had all this information in it. So, if you wanted to do a... The parameters were there. You're into the reference. You don't look at what the teaching of the reference is until you make a showing. No, but I'm just talking about in terms of the problem with the... I mean, maybe I'm wrong, but I saw this as a urine vetter was trying to avoid input errors. And the question was, is there some relevant prior art that does the same thing? And that would logically be commanded to this inventor's attention. And if you're looking at... And the fact that it's out of the actual field of endeavor is irrelevant. Because that's the first part of the test, is whether something is in the field of art. If it's in the field of art, it doesn't matter what it's doing. It's the whole nine yards. It's analogous prior art. Right. I think your point is that you could abstract... If you keep going sort of like 101, you can make anything abstract if you extrapolate it up far away. So if input errors is the analysis, then everything essentially in the world is open. That's true. That's right. So, you know, we have an inventor here who's trying to invent a cutting machine. And if you looked at this reference, you know, years ago, when you did searches by flipping through the patents and read the abstract, would he think it's relevant to what he's doing? No. Even if he got that far, if he read the title, you know, Method and Apparatus for Processing... Our standard of review here is substantial evidence, isn't it? Substantial evidence. That is a fact question. Right. And the only evidence here is the references themselves. And I mean, the board, the brief of the patent office pointed to the board's decision. But what evidence have they put in the record to show that a Method and Apparatus for Processing a sealant and glass would have been reasonably thought about by someone designing a cutting machine? There's nothing in the record. All is this is this reference. And they have the burden to show that it's a proper reference. And they didn't meet that burden. So they drew a line that they allowed one claim, is that right? Yes. And so a line was drawn between the claims that were allowed, the claim that was allowed, and those that were rejected. Is your position that the line was drawn in the wrong place or that no line should have been drawn in terms of the claims you've repealed? We're saying that the McGlinchey reference was not analogous and should not have been, is not a proper basis for rejecting these claims. What about the PTO's argument that even if you take McGlinchey out of the inquiry, that there is an argument, a fair argument, and that there's evidence on the record to support the argument that those claims are obvious over Jabari standing alone? Well, they've said that Jabari does not teach the element of the claim, the memory, the last element of the claim. And now they're saying, well, it would be obvious. That's contrary to the position they've taken throughout the prosecution. And I think the examiner was right when he said this is not a 102 rejection under Jabari  But they're saying it could be a 103 rejection under Jabari because things like barcodes were well known in the art at the time. Barcodes were known to the extent that they associated in a grocery store the barcode and the price of the product. Barcodes were not well known in terms of these type of machineries. I mean, Jabari itself has manual entry. The other references, Dick has manual entry of those informations. None of them do that. But you're not claiming the use of the barcode, is that right? The claim requires that there be a product identifier associated with the product that's not the dimension. Yes, however it's identified. Right. And that that identifier is then linked to the dimension. And so you're then able to adjust the controller or adjust the stop to position it in the right place. So the weight or saw cuts off the amount that should be cut off. So that the resulting line fits the window. All right, let's move to the office and we'll save you a little time. Okay, thank you. Ms. Shelford. Good morning. May it please the court. It sounds to me like the court understands the arguments in the case and I'm happy to answer any questions that the panel has. Let's start with the last point. I mean, you argued that it could be obvious over Jabari alone. And I understand one of the problems with that is whether there's a Chenery problem because the board didn't base its decision on that. And how do you get around that? Well, I think the facts and evidence here really show the point there, which is that so for example, on claim 30, the examiner found that the lookup table was well known and the applicant didn't dispute that in front of the board. So the lookup table is really the fundamental, what's being used in the process of taking an indicator and converting it to a dimension. That's the only technology being used there. So Jabari has a memory. It would have been, it's conceded by everyone that it would have been known to add a lookup table to that memory and that sort of takes care of all of the necessary facts here. But also, we have the McGlinchey reference that shows the existence of taking a non-dimension and using that through a lookup table to find a dimension of a product. But you added the, it would have been obvious over Jabari alone, I assume, in case we concluded that the McGlinchey reference was not an appropriate prior art reference. Sure, right. I think either way is an appropriate way to go. I stand behind both of them. I guess I'm trying to understand how you get past the Chenery problem with Jabari alone. I could see if you said, even if you think McGlinchey is not a good reference, you should remand for the board because the board could consider Jabari alone. I mean, I think the facts and evidence are what we're relying on here, that nobody's or sorry, that the lookup table is known and sort of generally known. There's no dispute that it is not shown in Jabari, but that it is still an obvious limitation based on Claim 30. So once you have that, it's just, I think the facts and evidence are... It's not, we're not looking at a district court decision where we have flexibility to the record, we've got an APA stricture on us. And so that's what I'm questioning. Right, right. But all of the underlying facts here have been found, that's all I'm saying. It's that the board or sort of, it just hasn't even been challenged because the examiner found the fact that the lookup table was known in the art. So let's talk about McGlinchey because it is a little concerning that the examiner doesn't even define who one skill in the art is. So he doesn't even say what the art is. He just goes out and finds something that seems to have this kind of an input. And when asked why that's relevant art, he says, because it has the input. I mean, I get that the board tried to save what the examiner did by backing up and saying, let's define one of skill in the art, but we have to start with what the rejection was based on, right? Right. And what the examiner did was find a reference that shows what's missing from Jabari. But it's like you were saying earlier that it sort of depends on what level of specificity you're looking at. And here, this claim is admitted to be, everything in this blind cutting machine claim is in Jabari, including automatically positioning the stops based on... Except one limitation. Except this one limitation. And if that's not the problem that the inventor was trying to solve, then there's nothing left. Then all you have is something that's disclosed by Jabari. So you have to be looking at what is it that the inventor is trying to add to the prior art. And so what the inventor here is trying to add to the prior art is using a barcode instead of a dimension. It just seems like we're doing this backwards. So what you're saying is, you don't figure out what the relevant field is and then see if anything's in that field that teaches that. You're saying, let's go find what teaches it and then let's define the field to cover whatever we found. Well, there are two different prongs to the test. So the first prong of the test is what you were saying before, which is, let's define the relevant field and we are looking for references in that field. And if so, then that satisfies the first prong of the test. But if you don't satisfy the first prong of the test, there's a reason there's a second prong of the test, which is, well, other fields that this inventor might have looked to. Right, but you have to define those fields before you say, I found something and now I define the other fields to cover what I found. Well, I think some of the sports cases elucidate that. So cases like the scientific plastic case, which says that a soda pop cap was relevant to what somebody would have looked to in the art of flash chromatography because it's solving that same problem. So it has to do with a sort of narrower view of what the problem being solved is because obviously soda bottles are not in the field of flash chromatography. And sort of, it's a similar issue in the icon case. The icon case has the hinge for a fold-up bed, a Murphy bed, being applied to the field of treadmills. So it's not that somebody working in treadmills also works in the folding bed industry. Right, but you're still looking at hinges. You're looking at, right, the part of the claim that this separate reference is being used for. So in that case, the separate reference was being used just for a hinge and the rest of it was shown in the claim. And here, the rest of everything was shown in Jabari. Everything from the claim was shown in Jabari except the thing that's missing, which is how you... How you... Avoid error. Right, how you avoid error by taking some... When you input, you're telling the machine to do something. That's right. And you can tell the machine incorrectly and then you get a bad result. Right, and so instead you can use a barcode scanner or some other... That's what the combination says, but the inventor was saying, I've found a way in cutting lines to avoid errors in the inputs. That's right. And it's... And so you, from your view and the board's view, is then that inventor would have been cutting other fields other than cutting Venetian blinds field to look for ways in which you avoid error in inputting into a machine. Right, and that's exactly what the test tells the board to look at. And so hypothetically, if the machine here had been a spaceship or taking people to the without mistake, that would have qualified as well. The field of art in which you find the reference is irrelevant. I think that's right, but certainly the cases... Well, that's what I'm trying to push to you, because some of the questions have suggested that there should be some relationship between the field of the invention and the field in which you find the prior art, although it doesn't have to be the same, which the same is the test for if you find the reference, then everything that's taught in the reference comes in, whether or not it was your problem or not. I mean, I think some of the cases could be read to say that the distance from the field... From the precise field of the inventor's invention is relevant. Those cases are all from before KSR, which explicitly says it can be from within the inventor's field or elsewhere. Elsewhere is just... That's a vague term. What I'm trying to get at is that, to me, the hypothetical of taking some field of art that's way away, and you ask, is that pertinent? And if you say no, and I'm sorry if it's aerospace that's too far away from Venetian bombs, then the question would be, you know, are windows, the manufacturing windows, is that too... Is that too far away from Venetian bombs? Right. I think it's possible that you can get too far away, but I do think that the cases that talk about the soda bottle being used as prior art... Pretty far away from flash photography. Yes. And so I think the cases certainly do allow reaching pretty far away from the precise art that the inventor is looking to. And the reach here is not as far as a spaceship. I think that's right. But isn't the law that there must be some analogy, some suggestion as to which field to look in for some kind of analogous transferable technology? I mean, certainly you have to be able to apply the... You have to be able to take what's shown in the second reference and apply it to the first reference. How do you get to the second reference? There is a bridge there to be crossed that I think there is a lot of background for as to what might cause or lead a person of ordinary skill to look in this other field for guidance. Isn't that the law? I think that's the pre-KSR law. I'm not sure that's the law anymore after KSR, because KSR explicitly says you can look in this field or others. You're talking about a person of ordinary skill without the benefit of what this inventor found somewheres in a spaceship that would lead a person of ordinary skill to look in this area for guidance, how to solve the problem of cutting strips to a uniform size. The problem is not the problem of cutting strips to a uniform size, because Jabari has solved that problem. The problem here is only... The only thing left after you've looked at Jabari is just whether you can look at... Instead of looking at the dimension... Well, it hasn't solved the problem. The problem is the cutting strips. It's solved it in other ways. Now we have an inventor that has another way of solving it. Well, I would dispute that it's solved in other ways. Jabari solves it in precisely the same way. It's just a question of how it gets the input of the dimension. So the dimension can either be input as a number, 36 inches, or as a barcode. And that's the only thing left once you... So all of the blind cutting part has been solved by Jabari, and what you have left is just this additional element of looking up the dimension by using a barcode or some other input instead of inputting the dimension itself. So what leads, not this inventor who is presumed not to be of ordinary skill, what would lead a person of ordinary skill to look for cutting window glass? Well, for one thing, it's in the field of machines that are taking a dimension of a product and applying it. So the window glass is taking a dimension, or the window machine is taking a dimension of the window, the width of it. That's in retrospect. What would have led a person of ordinary skill to look in that field for the solution to this problem? It's the existence of this problem that leads. So that's exactly what the cases like ICON say, is that it's the existence of, you need to find a spring, and oh, these Murphy beds have springs, and we can look to those. And here, you need to find a way to not input the dimension itself. So you can look to other machines that have a way to not input a dimension itself. You see what's troubling me. We have this hindsight. Once we know how this person solved the problem, then we look and see where such a procedure may have been used elsewhere. I mean, I think that it's certainly important to avoid hindsight bias, but the case law does allow you to look outside the field of the invention, and that's the purpose of the second prong of the test. So the examiner here and the board were looking outside the field of the invention, and assuming that a person of ordinary skill would have some understanding of other machines outside of the precise blind-cutting field. Okay, anything else you need to tell us? No, that's all I have. Thank you. Thank you. I'd like to respond to just a couple of points. The scientific product case involved a low-pressure liquid chromatograph cartridge, a pressurized cartridge for a chromatograph. And the reference was a pressurized bottle, and the problem that both were trying to solve was to get the seal on the cartridge to maintain the pressure. So those were related orcs. Here... Well, again, you're looking to the problem, right? I mean, I think that case is your hardest one to get around, because there, what ultimately they said is, because they both solved the same problem, you can look to it. So there wasn't a first defining of the art before determining its relevance. Do you understand? Yeah, I see what you're saying, but in terms of pressurized bottles, that's the art, and that's the problem they're talking about, because the claim was to a pressurized cartridge here. The claim in our case is to... Well, the problem is the line that you're suggesting we need to draw, we have to be careful not to draw the line so that you don't swallow the first point. I mean, the second part of the test, which is the problem to be solved, as opposed to the field you're in, if you draw that line too tightly on the second part of the test, you're right back in the first part, and you know that. Yes, that's true. You know that. So the question is... That's true. That's why I asked the spaceship hypothetical, and that sort of says, well, maybe we won't let it happen over there. But if you're in the general field of manufacturing, is that... That's, you know, once you... You're saying the general field of manufacturing isn't sufficient? No, because it would include... No, you're saying, well, because you say it's too big, right? Too big, right. I understand that, but you're saying, well, then where do you draw the line? Is it saying, okay, this is a window, so it's manufacturing in the construction industry? No, that... As a way of not... Is it... So this is Venetian blind. Home products? Well, the... Measuring things for the home? We're trying to design a machine that's cutting a blind, okay? Your invention is anticipated by one reference, except for the fact that that reference doesn't have a limitation that hopes to have accuracy in the input of the instructions to the machine. Correct. Right. Right. And so your problem was, is there any art out there that helps you with instructions to where you have the operator inputting information to prevent him from making mistakes? Right. And McGlinty doesn't talk anything about mistakes. He's not concerned with that at all. Well, McGlinty provides a device that allows you... Mark allows you to achieve the purpose that your client was trying to achieve. And you know that. Well, it provides some information about the properties of the product. Right. Yes. Solves the problem. Right. But it's an oven. You know, someone designing a saw is not going to be looking at an oven. And that's the point. Why would somebody dealing with flash photography look at a Pepsi bottle? No, he wasn't dealing with flash photography. He was dealing with a cartridge that held some of the reactants or material used in that machine. I can find the Pepsi. Perhaps the bottle would be... Any bottle would be sufficient? A pressurized bottle that holds contents? That would... If I'm trying to design a bottle to hold pressure that has the right seal on it, and someone has a bottle that has a seal to hold pressure, I think that would come to my attention. It's in a spaceship. Pardon? It's in a spaceship. It's a container in a spaceship. If the reference is talking about a spaceship, okay, and somewhere in there it has this bottle, I don't think it's going to come to his attention.  The reference was a bottle. In scientific products. What they're doing here is they're taking a reference that has nothing to do with this field, and no one designing a saw is even going to look at. And then... But the problem is that the law allows the ordinary artisan to look outside of his own field. But there has to be some reason why he would look there. And they offered no reason why other than the information is in it that's pertinent. And that's not the test. You have to show why someone would look at it. Thank you very much. Thank you. Thank you both. The case is taken under submission. That concludes this morning's argued cases. All rise.